Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. CNA was the carrier on the risk at all times relevant herein.
4. Plaintiff's average weekly wage pursuant to the Industrial Commission Form 22 is $564.13, yielding a compensation rate of $376.11.
5. The parties stipulated to the Shopping Center Lease between defendant-employer and Ticon, Inc.
6. The parties stipulated to plaintiff's diagram of the parking lot in front of the shopping center.
 *********** MOTION
Plaintiff's Motion to Strike Portions of Defendant Appellants' Brief on grounds that it argues facts not in evidence is hereby DENIED.
 ***********
Based upon all the evidence adduced from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was 55 years old and was an unemployed licensed practical nurse.
2. Plaintiff began working for defendant-employer in February 1999 as a staff nurse.
3. On 31 March 2000, plaintiff left work after completing her shift. As plaintiff crossed the parking lot and approached her car, she tripped and her right leg twisted under her, causing her to fall on her right hip, leg and buttock area. Plaintiff was unable to identify a specific cause of her tripping, but she testified that there was some broken concrete and standing water where she fell. Plaintiff immediately experienced knee, hip and back pain and soon thereafter presented to a physician.
4. The parking lot where plaintiff fell was not owned by defendant-employer.
5. In 1994, defendant-employer entered into a Lease Agreement with Ticon, Inc. to lease about 5,632 square feet of interior space. Coastal Medical Group is a prior name of defendant. The Lease Agreement between defendant and Ticon, Inc. was in effect on 31 March 2000.
6. Under Section 1.1 of the lease, defendant-employer is charged "minimum rent" based upon the square footage of the "demised premises" which consists of a space located in a building which is to be rented. "Common Areas" are defined as those "designated for the general use in common of occupants of the Shopping Center" and include the parking lot. The parking lot for defendant-employer's patients and employees was located in front of the shopping center.
7. Gwen Roger, practice manager for the Scott Medical Group which owns defendant-employer's business, testified at the hearing that defendant-employer instructed employees on where to park, including erecting signs in the parking lot, which designate specific spaces closest to the business as reserved for patient parking. These signs were still posted as of the date of the hearing. There was no evidence regarding penalties for the failure to comply with the parking instructions or that vehicles may be towed for parking in spaces designated for others.
8. At the hearing before the Deputy Commissioner, plaintiff testified that defendant-employer instructed its employees to park on either side of the parking spaces that were reserved for patients, and that the designated employee parking was farther away than for the patients.
9. Section 4.2 of the Lease Agreement provides that the tenant's use of the Common Areas "shall be subject at all times during the term to reasonable rules and regulations adopted by Landlord . . . governing the use of the parking areas. . . ." There are no other rules or regulations listed which specifically make the tenant responsible in any manner for the parking areas or any other Common Areas.
10. Section 6.1 of the Lease Agreement provides, in part, "that within a reasonable period after receipt of written notice from Tenant of the need therefore, Landlord shall make . . . necessary repairs to sidewalks, parking areas and curbs." There are no sections of the lease that instruct the tenants to undertake any maintenance of common areas under any circumstances.
11. Section 2.7 of the Lease Agreement states that the tenants in the Shopping Center, including defendant-employer, must pay to the Landlord, as an additional rent, Tenants' share of "Common Area Costs." The "Common Area Costs" are defined in the Lease as ". . . all of the Landlord's costs and expenses of operating and maintaining the Common Areas in the Shopping Center. . . ." Moreover, pursuant to Section 2.10 of the Lease Agreement, the additional rent for all Tenants, including defendant-employer, is based upon the size of each Tenants' leased square footage area, thus resulting in a corresponding pro rata adjustment for its share of the Common Area costs related to the size of the demised premise and not upon any designated section of the parking area.
12. Under the terms of the Lease Agreement, defendant-employer did not own or lease the parking lot, nor was defendant-employer responsible for maintenance or upkeep of the parking area. Although defendant-employer was responsible for its pro rata share of the "Common Area Costs," thereby providing capital for the Landlord's upkeep or maintenance of those areas, defendant-employer could reserve spaces for patient parking and defendant-employer directed employees to park in areas not reserved for patients. These factors do not operate to impute tenant control over any specific area of the parking lot.
13. The competent evidence in the record establishes that since defendant-employer does not own or lease the parking area and is not responsible for the upkeep and maintenance of the common areas, including the parking lot, plaintiff's injury did not occur on defendant-employer's premises and any disability resulting from plaintiff's injury, did not arise out of and in the course of her employment with defendant-employer.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Act, the injury must arise out of and in the course of employment. N.C. Gen. Stat. §97-2(6). Injuries to employees which occur while the employee is traveling to or from work do not arise out of or in the course of employment and are thus not compensable. Bass v. Mecklenburg County,258 N.C. 226, 128 S.E.2d 570 (1962).
2. The North Carolina Supreme Court held in Barham v. FoodWorld,300 N.C. 329, 266 S.E.2d 676 (1980), that where an employer did not have any lease responsibility, ownership, duty to maintain or other responsibility for the parking lot adjacent to the premises, an employee injured in that parking lot was not eligible for compensation under the Act. The mere fact that the employer instructed its employees not to park in a certain area was not sufficient to establish a "level of control which is necessary to support a determination that this [parking area] was a part of [defendant's] premises." Id.
3. In the instant case, the Lease Agreement specifically reserves the maintenance and upkeep of the parking area as a duty of the Landlord. The fact that a portion of defendant-employer's rent was designated by the Landlord as reimbursement for the costs of such maintenance is not indicative of any control or responsibility on the part of the tenant for the parking area. As the parking area was not a part of defendant-employer's premises, plaintiff's injuries did not arise out of or in the course of her employment and plaintiff is not eligible for compensation under the Act for injuries incurred in the parking lot.Id.; N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits under the North Carolina Workers' Compensation Act is hereby DENIED.
2. Each party shall pay its own costs.
This the ___ day of December, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER